UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

DANIEL KEATING, Individually and as   :
PRESIDENT OF NEWPORT POLO,   :
INC.   :
   :
       v.   :   C.A. No. 11-179S
   :
DIAMOND STATE INSURANCE   :
CO.   :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

     Pending before the Court for a report and recommendation (28 U.S.C. § 636(b)(1)(B); LR

Cv 72(a)) is a Motion for Summary Judgment filed by Defendant Diamond State Insurance Co.

(Document No. 12). This is a declaratory judgment action brought by Plaintiff, Daniel Keating,

individually and as President of Newport Polo, Inc. Plaintiff is seeking costs of defense and liability

coverage from his insurer, Diamond State, for a damages award in a personal injury action brought

against Keating and Newport Polo in Rhode Island Superior Court by a water treatment salesman

who was hurt in a slip and fall on property leased by Plaintiff. Diamond State moves for summary

judgment in its favor, claiming that it had no duty to defend or indemnify such claim under the clear

and unambiguous terms of the applicable insurance policy. For the reasons stated below, I

recommend that Diamond State's Motion for Summary Judgment (Document No. 12) be

GRANTED.

     **Summary Judgment**

     A court shall grant summary judgment when the "movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). A dispute is considered "genuine" if the evidence about the fact is such that a

reasonable jury could resolve the point in favor of the non-moving party.  Farmers Ins. Exch. v. RNK Inc., 632 F.3d 777, 782 (1st Cir. 2011) (citing Rodriguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).  A fact is considered "material" if it has the potential of determining the outcome of the litigation.  Id.

Once a movant has claimed the "absence of all meaningful factual disputes," the non-movant "must show that a genuine issue of material fact exists."  Certain Interested Underwriters at Lloyd's, London v. Stolberg, 680 F.3d 61, 65 (1st Cir. 2012) (citing Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir.2010)).  The non-movant may not "rest upon mere allegation[s]."  Braga v. Hodgson, 605 F.3d 58, 60 (1st Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  The non-movant "must point to facts memorialized by materials of evidentiary quality and reasonable inferences therefrom to forestall the entry of summary judgment."  Certain Interested Underwriters at Lloyd's, London, 680 F.3d at 65 (citing Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

**Facts**

The following facts are undisputed for purposes of this Motion.  During the period relevant to this dispute, Keating leased property at 2503 East Main Road, Portsmouth, Rhode Island for both residential and commercial purposes.  (Am. Compl. ¶ 1).  Keating not only lived on this property, but also used the land for the operation of Newport Polo.  (Am. Compl. ¶ 2; see also Keating Aff. ¶ 2).  Newport Polo, a Rhode Island corporation, primarily hosted polo-related events and activities. Id.  In his capacity as President, Keating purchased an "Equine Commercial General Liability Policy" (the "Policy") from Diamond State for Newport Polo.  (Am. Compl. ¶ 5).  The Policy expressly provided coverage for owned/leased horses, boarding of horses, instruction on horses

owned by clients and/or insured, and sanctioned shows and competitions (e.g., polo matches). (Document No. 12-1, p. 4).

On January 30, 2009, a water treatment salesman, James Maccarone ("Maccarone"), visited the property to test the well water and to solicit the sale of a water purification system for the residence.  (Am. Compl. ¶ 16; see also Document No. 24 at p. 4).  When Maccarone was leaving the property, he was injured after he slipped and fell on accumulated snow and ice.  (Document No. 12 at p. 4).  Maccarone subsequently brought a negligence action against Newport Polo and Keating in Rhode Island Superior Court and obtained a jury verdict in his favor.  See Maccarone v. Newport Polo, Inc., C.A. N.C. 09-0546.

Keating made a claim for coverage regarding the Superior Court lawsuit on the Policy he obtained from Diamond State.  (Document No. 24 at p. 2).  However, the claim for coverage was denied by Diamond State pursuant to the Policy's "Non-Equestrian Activity Exclusion" (the "Exclusion").  Id.  The Exclusion states:

> THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART PRODUCTS / COMPLETED OPERATIONS LIABILITY COVERAGE PART
>
> NON-EQUESTRIAN ACTIVITY EXCLUSION
>
> It is hereby understood and agreed that this insurance does not apply to "bodily injury" or "property damage" arising out of non-equestrian activities.
>
> This exclusion does not apply to any non-equestrian activity declared on the application or notified to the Company, provided the Company accepts the activity on the policy or by endorsement.

> This exclusion does not apply to reasonable and customary non-equestrian activities that are incidental to a covered activity.
>
> This endorsement is subject otherwise to the terms, conditions, exclusions, and limitations of this insurance.

(Document No. 22 at p. 2; <u>see also</u> Document No. 24 at p. 2).  As a result of its decision to deny coverage, Diamond State did not provide Keating with a defense in the Maccarone lawsuit, nor did it indemnify him for any liability due.  <u>See</u> Am. Compl. ¶¶ 27, 29. In the present case, Keating seeks to recover the losses he suffered.  <u>See</u> Am. Compl. ¶¶ 32-34.  Diamond State, in turn, alleges that the claim is not covered by the Policy and seeks a declaration to that effect.  (Document No. 12 at p. 10; Document No. 22 at p. 8).

**Discussion**

**A.      Duty to Defend**

"Under Rhode Island law, an insurer's duty to defend [its insured] is broader than its duty to indemnify."  <u>Emp'rs Mut. Cas. Co. v. PIC Contractors, Inc.</u>, 24 F. Supp. 2d 212, 215 (D.R.I. 1998).  Rhode Island applies the "pleadings test" in determining a duty to defend.  <u>Progressive Cas. Ins. Co. v. Narragansett Auto Sales</u>, 764 A.2d 722, 724 (R.I. 2001).  "Under the pleadings test, the insurer's duty to defend is ascertained by laying the complaint 'alongside the policy; if the allegations in the complaint fall within the risk insured against in the policy, the insurer is said to be duty-bound to provide a defense for the insured.'"  <u>Emhart Indus., Inc. v. Home Ins. Co.</u>, C.A. No. 02-53S, 2007 WL 2782989 at *6 (D.R.I. Sept. 26, 2007) (quoting <u>Emp'rs Fire Ins. Co. v. Beals</u>, 240 A.2d 397, 402 (R.I. 1968)).  "[I]n other words, when a complaint contains a statement of facts which bring the case within or <u>potentially</u> within the risk coverage of the policy, the insurer has an unequivocal duty to defend."  <u>Emhart Indus., Inc.</u>, 2007 WL 2782989 at *5.  Further, "a

reasonableness requirement is implicit in the pleadings test" in order to defeat attempts to "'plead to coverage' by characterizing a claim as something other than what is described in the complaint's factual allegations." Narragansett Jewelry Co., Inc. v. St. Paul Fire and Marine Ins. Co., C.A. No. 05-225T, 2007 WL 4153660 at *4 (D.R.I. Nov. 26, 2007). See also Peerless Ins. Co. v. Viegas, 667 A.2d 785, 789 (R.I. 1995) ("A plaintiff, by describing his or her cat to be a dog, cannot simply by that descriptive designation cause the cat to bark."). Finally, "[a]ny doubts as to whether the complaint alleges an event covered under the policy must be resolved in favor of the insured." Narragansett Jewelry, supra, at *3.

The application of the "pleadings test" requires a determination as to the insurance policy's scope of coverage. Under Rhode Island law, insurance policies are interpreted "according to the same rules of construction governing contracts." Town of Cumberland v. R.I. Interlocal Risk Mgt. Trust, Inc., 860 A.2d 1210, 1215 (R.I. 2004). The Courts "look at the four corners of a policy, viewing it in its entirety, affording its terms their plain, ordinary and usual meaning." Id. If a policy's terms are ambiguous, it must be "strictly construed in favor of the insured." Id. If a policy's terms are unambiguous, it will be construed and applied as written. Malo v. Aetna Cas. and Sur. Co., 459 A.2d 954, 956 (R.I. 1983). An ambiguity exists when the policy is "reasonably and clearly susceptible to more than one interpretation." W.P. Assocs. v. Forcier, Inc., 637 A.2d 353, 356 (R.I. 1994). However, "the test is not whether there exist alternate meanings but whether there exist reasonable alternate meanings." RGP Dental, Inc. v. Charter Oak Fire Ins. Co., No. 04-445ML, 2005 WL 3003063 at *4 (D.R.I. Nov. 8, 2005) (emphasis in original).

Here, the Non-Equestrian Activity Exclusion at issue under the Policy is clear and unambiguous. The Exclusion plainly states that coverage does not extend to "bodily injury" or

"property damage" arising out of non-equestrian activities.  Plaintiff does not argue that this general

exclusion is ambiguous or inapplicable.  (See Document No. 24 at p. 3).  Rather, Plaintiff argues that

the terms of the exception to this exclusion are ambiguous and capable of more than one reasonable

meaning.  Id.  The exception[1] states that the exclusion does not apply to "reasonable and customary

non-equestrian activities that are incidental to a covered activity."  (Document No. 22 at p. 2).

However, the exception is clear and unambiguously provides that a non-equestrian activity will not

be covered unless it is "reasonable and customary" and "incidental" to a covered activity.

     Plaintiff argues that because "Maccarone's fall occurred on property covered by the Policy,

and that the water to be purified may have at times been used for the paddocks," then "Keating's

living in the cabin is incidental to equine activities, using the water from the cabin was incidental

to equine activities, and operating their equine business out of the cabin were facts incidental to

equine activities."  (Document No. 24 at p. 3).  Defendant, however, counters that the policy is

unambiguous and under the pleadings test, the duty to defend was not triggered based on the plain

language of the Superior Court Complaint or the Policy.  (See Document No. 22 at p. 7).  I find

Defendant's position to be more persuasive.

     First, looking to the Maccarone Complaint, it indicates that Maccarone fell on snow and ice

while on the property on January 30, 2009.  (See Document No. 22-1).  This was plainly not polo

season, and Plaintiff's Application for the Policy confirms that sanctioned polo events are held on

"Summer Sundays."  (Document No. 12-1, p. 7).  Also, there is no evidence that Maccarone's visit

had any direct relationship to polo or care of the horses, and it is undisputed that he visited the

---

[1]  By its terms, the Exclusion contains another exception to "a non-equestrian activity declared on the
application or notified to the Company, provided that the company accepts the activity on the policy or by endorsement."
(Document No. 22 at p. 2).  Plaintiff does not contend that this exception is applicable, and no evidence has been
presented that would place the applicability of this exception in dispute.

property to test the water in hopes of selling a water purification system for the "cabin," i.e., Plaintiff's residence/home office.

The Policy in issue is an Equine Commercial General Liability Policy which broadly excludes coverage for bodily injury arising out of non-equestrian activities.  As to the exception to the Exclusion, it is undisputed that the activity in question is a sales visit by a water purification system salesman seeking to sell a system for the home/office on the property.  As support for his arguments, Plaintiff testifies in his Affidavit that he and his wife have used water from the "cabin" for horses, "which we continue to do from time to time despite having another well for horses" and that students/guests of Newport Polo, Inc. "have used the bathroom of our home."  (Document No. 16-2, ¶¶ 6-7).

While it is clear that a source of water is needed to board and care for horses, Plaintiff has not shown that obtaining a quote for a water purification system for a residence is a "reasonable and customary non-equestrian activity that is incidental to a covered activity," i.e., owning/leasing horses, boarding horses, instruction on horses and horse shows or competitions.  Also, Plaintiff concedes that the property contains "another well for horses" and offers no evidence that he was soliciting a water treatment system directly for the benefit of the horses or equine activities covered by the Policy.  If the exception was read to cover this incident, then this specialty equine insurance policy would effectively become a general liability policy which was clearly not the intent of the parties.[2]  Plaintiff's proposed interpretation is unreasonable.  Comparing the Complaint to the Policy,

---

[2] While this Motion was pending, Plaintiff sought leave of Court to amend his Complaint to add a negligence claim against his insurance agent alleging a failure to obtain adequate insurance.  (Document No. 17).  Plaintiff testified by Affidavit that he showed both the commercial and residential leases for the property to his insurance agent and that the agent was well aware of both the residential and business use of the property.  (Document No. 16).  At a hearing on the Motion to Amend, Plaintiff's counsel voluntarily withdrew the request to add the insurance agent as a defendant to this action.

this type of injury clearly would not be covered under the Non-Equestrian Activity Exclusion.  A "bodily injury" occurred when Maccarone slipped on ice during a sales visit, which is not an equestrian activity or reasonably and customarily incidental to such activity.  Furthermore, Plaintiff's position rests solely on speculation and seeks to expand the exception beyond its breaking point.  Whether the water purification system would have been purchased or the particular well in question might have supplied purified water to the paddocks in the future is speculative and tenuous.  For the foregoing reasons, Diamond State had no duty to defend under these circumstances, and summary judgment should be granted.

### B.    Duty to Indemnity

Diamond State has also moved for summary judgment on the duty to indemnify claim on the same grounds that the Non-Equestrian Activity Exclusion bars recovery under the Policy.  Again, Plaintiff argues that this duty was triggered because the Maccarone injury is covered by the Policy because the injury was incidental to equine activities.  As explained above, the Exclusion and its exception are clear and unambiguous.  Furthermore, Plaintiff's interpretation is not reasonable because it is speculative and seeks to expand the exception to the point of swallowing the Non-Equestrian Activity Exclusion.  Finally, since the duty to defend is broader than the duty to indemnify and I find no duty to defend, it follows that there was no duty to indemnify as well, and Diamond State is also entitled to summary judgment on this claim.

### Conclusion

For the foregoing reasons, I recommend that Diamond State's Motion for Summary Judgment (Document No. 12) be GRANTED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


  /s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
September 10, 2012