UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

DANIEL KEATING :
:
v. : C.A. No. 11-179S
:
DIAMOND STATE INSURANCE :
COMPANY :

**MEMORANDUM AND ORDER**

Pending before me for determination (28 U.S.C. § 636(b)(1)(A)) is Plaintiff's Motion for Reconsideration of my Report and Recommendation dated September 10, 2012. (Document No. 32). Defendant objects. (Document No. 33). A hearing was held on February 11, 2013. For the following reasons, Plaintiff's Motion is DENIED.

**Background**

This is a declaratory judgment action brought by Plaintiff, Daniel Keating, individually and as President of Newport Polo, Inc. Plaintiff seeks costs of defense and liability coverage from his insurer, Diamond State, for a damages award rendered against Plaintiff in a personal injury action brought in Superior Court by a water treatment salesman, Mr. James Maccarone, who was hurt in a slip and fall on property leased by Plaintiff and owned by the Muriel CP Anthony Trust (the "Trust"). Mr. Maccarone alleged in the suit that he slipped and fell on the "entranceway" to 2503 East Main Road, Portsmouth, Rhode Island, due to snow and ice which was negligently allowed to accumulate. (Document No. 22-1 at p. 2). Mr. Keating testified by Affidavit that he lives in the cabin at 2503 East Main Road and also operates his business, Newport Polo, from "an office in the home." (Document No. 17-3). The Trust was also sued and found liable in the Superior Court

action.[1] The Trust's insurer, Farm Family Casualty Insurance Co., has apparently paid the entire judgment and is seeking to exercise its subrogation rights to recover Plaintiff's share of the judgment from Diamond State.

To further complicate matters, the Trust is named as an "additional insured" under the Diamond State policy. Also, the Commercial Lease Agreement between Plaintiff and the Trust required Plaintiff to maintain at least $1 million of general liability insurance coverage which names both Plaintiff and the Trust as insureds. There is also a Residential Lease covering the property which includes the cabin in which the Keatings reside. (Document No. 17-3).

This case was removed to this Court by Defendant on May 3, 2011 and fact discovery closed as of December 31, 2011. On February 15, 2012, Defendant moved for summary judgment. After the Motion was filed, Plaintiff was granted leave to amend to add an additional claim of breach of duty to defend and was granted extensions of the deadlines to submit briefing on the Summary Judgment Motion. (See Document Nos. 13 and 23).

Ultimately, on September 10, 2012, I issued a Report and Recommendation that Defendant's Motion for Summary Judgment be granted based upon the Non-Equestrian Activity Exclusion contained in the applicable Equine Commercial General Liability Policy. (Document No. 26). A pro forma Objection to the Report and Recommendation is currently pending before District Judge Smith and is awaiting full briefing. (See Document Nos. 28, 29, 31, 35, 36 and 37).

Despite notice of this action dating back to 2011, neither the Trust, as an additional named insured, nor Farm Family, as subrogee, has moved to intervene in this action pursuant to Fed. R. Civ. P. 24 and they are not parties to this action. On September 24, 2012, new counsel entered this case

---

[1] The jury apportioned 70% of fault to Plaintiff, 10% to the Trust and 20% to Mr. Maccarone.

on behalf of Plaintiff. (Document No. 27). Further, such counsel advised the Court in a subsequent pleading that this "action was assigned by Plaintiff to the...Trust's subrogee, Farm Family Casualty Insurance, to permit Plaintiff and the subrogee insurer to seek to recover amounts paid by the insurer to a third party." (Document No. 28 at p. 1). Thus, despite this complicated background, the parties and issues presented in this case have not changed except Plaintiff now has a new counsel who seeks a second bite at the apple to present new arguments to the Court in opposition to Defendant's Motion for Summary Judgment.

**Discussion**

Plaintiff seeks reconsideration which the First Circuit has described as "an extraordinary remedy which should be used sparingly." Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006). "Unless the Court has misapprehended some material fact or point of law, such a motion is normally not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected." Id. "To obtain relief, the movant must demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law." Id. Plaintiff has demonstrated neither.

First, Plaintiff does not argue that there is any newly discovered evidence to present. Second, Plaintiff has not shown that I committed a "manifest error of law" in construing the Non-Equestrian Activity Exclusion.

Plaintiff claims that two errors warrant reconsideration. First, Plaintiff argues that reconsideration should be granted because the Trust, an additional named insured under the Diamond State policy, was not a party to this declaratory judgment action. However, despite notice

of this pending action, neither the Trust nor its insurer has ever moved to intervene in this case under Fed. R. Civ. P. 24.

Plaintiff relies upon Rhode Island's Uniform Declaratory Judgment Act, R.I. Gen. Laws § 9-30-11, for the proposition that it was error to allow this case to proceed to decision without either Plaintiff or Diamond State naming the Trust as a party. (Document No. 32-1 at p. 6). However, "[f]ederal courts hearing cases pursuant to diversity jurisdiction [such as here] apply federal procedural law and state substantive law." Vignola v. Gilman, 804 F. Supp. 2d 1072, 1075 (D. Nev. 2011) (citing Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996)). "Since the Declaratory Judgment Act [28 U.S.C. § 2201[2]] is procedural in nature, federal law controls the question of whether a district court may grant declaratory relief in a given case." Providence Journal Co. v. The Travelers Indem. Co., 938 F. Supp. 1066, 1079 (D.R.I. 1996); see also Fed. Ins. Co. v. Sammons Fin. Grp., Inc., 595 F. Supp. 2d 962, 971 (S.D. Iowa 2009); and Nirvana Condo. Ass'n, Inc. v. QBE Ins. Corp., 589 F. Supp. 2d 1336, 1343 n.1 (S.D. Fla. 2008). Thus, Plaintiff's mandatory joinder argument is premised on inapplicable state procedural law and is not well supported.

Second, Plaintiff argues that I erred in interpreting the Non-Equestrian Activity Exclusion. Plaintiff contends that I misapplied the law in construing the phrase "arising out of" in the exclusion and focused on the "wrong actor's activity." (Document No. 32-1 at p. 9). In particular, Plaintiff argues that I erroneously focused on Mr. Maccarone's activity, the injured salesman, and not on Mr. Keating's activity, the insured. In Am. Commerce Ins. Co. v. Porto, 811 A.2d 1185, 1188 (R.I. 2002), the Rhode Island Supreme Court construed the phrase "arises out of" in the context of a

---

[2] Section 2201, 28 U.S.C., provides this Court with the discretion to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

provision in a homeowner's insurance policy which excluded coverage for a bodily injury claim that "arises out of...the actual, alleged or threatened sexual molestation of a person." It held that "[t]he phrase 'arising out of' within [insurance] policy language is generally considered to mean 'flowing from' or 'having its origin in,' thereby indicating that there only need be a causal connection, rather than a proximate causal connection." Allstate Ins. Co. v. Greloch, Case No. 1:11-cv-0015-ML, 2011 WL 4351630 at *4 (D.R.I. Sept. 14, 2011) (quoting Porto, supra). Accordingly, Plaintiff argues that the focus here should have been on the cause of Mr. Maccarone's injury, i.e., Mr. Keating's negligent maintenance of the driveway, and not the reason for Mr. Maccarone's presence on the property. Plaintiff contends that Mr. Maccarone's injury was caused by Mr. Keating's negligent property maintenance – an activity that he argues is incidental to equestrian activities.

Even if I reconsidered the applicability of the Non-Equestrian Activity Exclusion in this context, the result would not change. Mr. Maccarone's injury plainly arose out of non-equestrian activities which were not "reasonable and customary" and "incidental" to an equestrian activity covered by the policy. If accepted, Plaintiff's proposed interpretation of the exclusion would expand this policy to one providing broad general liability coverage for nearly all activities related to the premises since equestrian activities also take place on the premises.[3] However, the record is clear that Plaintiff purchased a specialized equine liability policy that expressly provided coverage only for the following "covered" activities – owned/leased horses (on or off premises), boarding of horses

---

[3] The Commercial Lease between Plaintiff and the Trust required Plaintiff to secure such coverage, and it appears that he did not do so. Further, at the hearing on this Motion, Plaintiff's counsel was unable to articulate an example of an excluded non-equestrian activity in the context of her proposed reading of the exclusion in issue. Thus, it is reasonable to conclude that Plaintiff's proposed reading is overly broad and would effectively render the exclusion meaningless and violate the "fundamental tenant that all words of an insurance contract must be given effect." MacArthur v. O'Connor Corp., 635 F. Supp. 2d 112, 117 (D.R.I. 2009); see also Clauson v. New England Ins. Co., 83 F. Supp. 2d 278, 281 (D.R.I. 2000).

(commercial or noncommercial), instruction on horses owned by either clients or insured, and sanctioned shows and competitions (e.g., polo matches). (Document No. 12-1 at p. 4). It is also undisputable that the policy unambiguously excludes coverage for bodily injury "arising out of non-equestrian activities" except "reasonable and customary non-equestrian activities that are incidental to a covered activity." Id. at p. 14. Applying Porto, the record is clear that Mr. Maccarone's injury arose out of, i.e., was "causally connected to," Mr. Keating's failure to adequately clear the driveway of ice and snow which is plainly a non-equestrian activity within the meaning of the Policy. Finally, the exception to the exclusion is inapplicable because clearing the driveway of ice and snow is not a "reasonable and customary non-equestrian activit[y] that [is] incidental to," i.e., attendant or related to, any of the equine activities expressly identified as "covered" in the Policy.

**Conclusion**

For the foregoing reasons, Plaintiff's Motion for Reconsideration (Document No. 32) is DENIED.

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
February 20, 2013